UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Herbert H. Hall, | Case No. 17-cv-4222 (WMW/TNL) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| St. Jude Medical S.C., Inc., | |
| Defendant. | |

After Defendant St. Jude Medical S.C., Inc., terminated Plaintiff Herbert H. Hall from his employment, Hall initiated this lawsuit, alleging retaliation in violation of public policy. Currently before the Court is St. Jude's motion to dismiss the amended complaint. For the reasons addressed below, the motion to dismiss is granted.

## BACKGROUND

St. Jude, a Minnesota corporation that manufactures medical devices, hired Hall, a Michigan resident, as a sales representative in August 2014. The parties signed a two-year employment agreement that provides that, at the conclusion of the agreement, Hall would become an at-will employee and the other terms of the agreement would remain in effect. The agreement contains the following clause: "Governing Law. This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction." The agreement also contains a forum selection clause:

> Exclusive Jurisdiction. All actions or proceeding relating to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts . . . . Employee submits to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked. Employee understands that Employee is surrendering the right to bring litigation against [St. Jude] outside the state of Minnesota.

In October 2015, Hall became a clinical specialist, providing support to St. Jude customers for their use of certain medical devices sold by St. Jude. Hall routinely operated and serviced medical equipment for Dr. Abdul Alawwa, a Michigan doctor who purchased the majority of his medical devices from St. Jude. In October 2016, an employee at Dr. Alawwa's office asked Hall whether St. Jude would sponsor a party for Dr. Alawwa's office. Hall refused because of his concern that sponsoring a party would violate the Physician Payments Sunshine Act, 42 U.S.C. § 1320a-7h, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. Shortly thereafter, in response to St. Jude's recall of certain cardiac devices, Dr. Alawwa requested that a St. Jude employee access Dr. Alawwa's patient files to facilitate the recall notification process. Mitch Gilbert, an area sales representative who worked with Hall at St. Jude, ordered Hall to access Dr. Alawwa's patient files, but Hall refused to do because he believed that accessing the files would violate the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §§ 1320d *et seq.*

Hall alleges that, after these events, Dr. Alawwa filed with Gilbert falsified complaints about Hall's work performance and Gilbert relayed those complaints to Hall's supervisors. St. Jude punished Hall for these complaints, Hall alleges, by declining to include him in a January 2017 training session. At a performance review shortly thereafter, Hall was advised that St. Jude was preparing to terminate his employment because clients

had complained about his performance. On February 6, 2017, Hall's supervisor informed him that he would be placed on a "performance improvement plan" and that Hall's employment likely would be terminated within a month of completing the plan. Hall never received a performance improvement plan, and St. Jude terminated his employment on February 17, 2017.

Hall subsequently initiated this lawsuit in Michigan state court, alleging that St. Jude terminated him in retaliation for his refusal to violate the Physician Payments Sunshine Act, the Anti-Kickback Statute, and HIPAA, in violation of Michigan's public policy against retaliation. After St. Jude removed the lawsuit to the United States District Court for the Eastern District of Michigan, the lawsuit was transferred to the District of Minnesota and Hall amended his complaint to allege that St. Jude's retaliatory termination of his employment violated Minnesota law as well as Michigan law. Currently before the Court is St. Jude's motion to dismiss Hall's amended complaint for failure to state a claim on which relief can be granted.

## ANALYSIS

### I. State Law Governing the Retaliation Claim

Hall argues that the governing-law clause in the agreement requires the application of Minnesota law to the retaliation claim. St. Jude counters that the retaliation claim is not covered by the governing-law clause and that the Court must employ Minnesota's choice-of-law analysis to determine whether Michigan law or Minnesota law applies.

## A. The Agreement's Governing-Law Clause Does Not Apply to the Retaliation Claim

Hall argues that his retaliation claim must be governed by Minnesota law because the claim falls within the agreement's governing-law clause. St. Jude counters that the governing-law clause is narrow and does not apply to the tort-based retaliation claim.

A federal court sitting in diversity applies the choice-of-law rules of the forum state—in this case, Minnesota[1]—to determine whether to give effect to an agreement's governing-law clause. *Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1012 (D. Minn. 2003) (applying Minnesota law). "Minnesota traditionally enforces parties' contractual choice of law provisions," *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994), but the specific language of a governing-law clause may limit that clause's reach to contract claims arising under the agreement, *see Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687-88 (8th Cir. 2001) (applying Nebraska law). A governing-law clause that "provide[s] that the contract will be 'governed by' or 'construed' under the laws of a particular state" is a narrow clause. *Fla. State Bd. of Admin.*, 262 F. Supp. 2d at 1012. Because the clause at issue here provides

---

[1] When a lawsuit is transferred from one federal district court to another, the transferee court ordinarily applies the choice-of-law rules applicable in the transferor court out of deference to the plaintiff's initial choice of forum. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013). But when a plaintiff's chosen forum directly contravenes a forum-selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *See id.* at 64. The parties do not dispute that the agreement provides for the exclusive jurisdiction of Minnesota courts, which means that Minnesota's, not Michigan's, choice-of-law rules apply.

that the agreement between Hall and St. Jude "will be governed by the laws of the state of Minnesota," the clause is narrow.

"[N]arrow choice of law provisions . . . do not govern tort claims between contracting parties," *id.*, unless those tort claims "are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contracts would be governed by Minnesota law," *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (applying Minnesota law). Courts apply narrow governing-law clauses to tort claims that require direct interpretation of an agreement's terms because such claims concern a party's failure to perform under the agreement. Such claims include negligent-design and negligent-misrepresentation claims, *see Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1061 (8th Cir. 2003) (applying Minnesota law), negligent-performance, misrepresentation, and unjust-enrichment claims, *see Nw. Airlines, Inc.*, 111 F.3d at 1392, fraud claims, *see Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1032-33 (D. Minn. 2013) (applying Minnesota law), and claims for breach of fiduciary duty, *see Fla. State Bd. of Admin.*, 262 F. Supp. 2d at 1013-14.

Here, Hall asserts a claim for retaliation, which does not sound in contract but in tort. *See Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588, 592-93 (Minn. Ct. App. 1986), *aff'd*, 408 N.W.2d 569 (Minn. 1987). Under this circumstance, the governing-law clause applies to the retaliation claim only if analysis of the retaliation claim "involves interpretation of the [agreement]." *Holden Farms, Inc.*, 347 F.3d at 1061. Under both Michigan law and Minnesota law, the cause of action for retaliation is a public-policy exception to the presumption that an at-will employee may be dismissed at any time for

5

any reason. *See Kimmelman v. Heather Downs Mgmt. Ltd.*, 753 N.W.2d 265, 268 (Mich. Ct. App. 2008); *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). The origins of the cause of action in the at-will-employment context indicate that retaliation claims can be (and ordinarily are) resolved without reference to any contract between the parties. *See Phipps*, 396 N.W.2d at 590-93 (describing origins of public-policy exceptions to presumption that at-will employment may be terminated at any time for any reason). And the elements of a retaliation claim generally do not require any analysis of an employment agreement: to state a claim for retaliation under Minnesota law, an employee must allege that the employee was terminated for refusing to participate in an activity that the employee, in good faith, believed violated a state or federal law. *See Dukowitz*, 841 N.W.2d at 150 (listing elements of retaliation claim). To state a claim for retaliation under Michigan law, an employee must allege that the employee was discharged as a result of the employee's refusal to violate a law in the course of employment. *See Kimmelman*, 753 N.W.2d at 268 (same). Neither state's law requires an employee to state any facts concerning a contract between the parties prior to termination.

Hall argues that his retaliation claim is closely related to the agreement, mandating the application of Minnesota law. The Court cannot award damages without interpreting the agreement, Hall maintains, because the agreement addresses the compensation and benefits he received as an employee of St. Jude. But Hall provides no legal authority in support of the position that a plaintiff must establish the precise amount of damages to which he is entitled to establish a defendant's liability for retaliation.

Hall also argues that St. Jude is judicially estopped from asserting that the governing-law clause does not cover Hall's retaliation claim. In support of its motion to transfer this lawsuit from the Eastern District of Michigan to this District, St. Jude argued that the retaliation claim *does* "relate to" the agreement, and Hall maintains that St. Jude should not be permitted to argue now that the retaliation claim does *not* relate to the agreement. Hall's argument is unavailing. Judicial estoppel prevents a party from adopting a position that clearly is inconsistent with an earlier position that the party persuaded the court to accept, and from which that party would derive an unfair advantage. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 840 F.3d 971, 979 (8th Cir. 2016). But St. Jude's earlier position—that the broad forum-selection clause requires the parties to litigate *in Minnesota*—is not clearly inconsistent with St. Jude's present position that the narrow governing-law clause does not require the *application* of Minnesota law to the retaliation claim. *See Inacom Corp.*, 254 F.3d at 687-88 (contrasting a broad clause, which applies to all rights and duties *relating* to an agreement, with a narrow clause, which provides that an agreement itself is *governed* by a certain state's law) (citing *Caton v. Leach Corp.*, 896 F.2d 939, 943 n.3 (5th Cir. 1990)). And no court adopted St. Jude's earlier position. After St. Jude moved to transfer this lawsuit from the Eastern District of Michigan to this District, Hall *stipulated* to the transfer. The order compelling the transfer did not address the merits of any argument by St. Jude. St. Jude is not judicially estopped from arguing that the governing-law clause does not apply to Hall's retaliation claim.

In short, the governing-law clause in the agreement does not apply to the retaliation claim because the claim sounds in tort and the Court can resolve the claim without

7

interpreting the terms of the agreement. As the governing-law clause does not apply, the Court employs Minnesota's choice-of-law analysis to determine whether to apply Michigan law or Minnesota law to the retaliation claim.

### B. Minnesota's Choice-of-Law Analysis

St. Jude argues that Minnesota's choice-of-law analysis provides for the application of Michigan law to the retaliation claim. Hall counters that Minnesota's choice-of-law analysis mandates that the Court apply Minnesota law.

When performing a choice-of-law analysis under Minnesota law, a court determines whether there is a conflict between the laws of the states in question, evaluates whether each state's law can constitutionally be applied, and considers five choice-influencing factors to determine which state's law to apply. *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469-70 (Minn. 1994). Here, each state's cause of action for retaliation differs. Under Minnesota law, a plaintiff need only allege a good-faith belief that the action the employer asked the plaintiff to perform violated the law. *See Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn. 1987). Under Michigan law, however, a plaintiff must allege that the required action would actually violate a law. *See Piasecki v. City of Hamtramck*, 640 N.W.2d 885, 888 (Mich. Ct. App. 2001). There is a conflict between each state's law.

To apply a state's substantive law in a constitutionally permissible manner, the state must have a significant contact or aggregation of contacts with the parties or events such that the choice of the state's law is neither arbitrary nor fundamentally unfair. *Jepson*, 513 N.W.2d at 469. Here, Hall is a resident of Michigan who was employed to work in

Michigan for St. Jude, an organization authorized to conduct business in Michigan. St. Jude is a Minnesota corporation, and the parties' agreement designates Minnesota as the site of any litigation between the parties. Based on these contacts, both Michigan and Minnesota are sufficiently connected to this lawsuit to apply either state's law in a constitutionally permissible fashion.

When the states' laws conflict and either state's law is constitutionally permissible, Minnesota courts consider the following factors to determine which law to apply: (1) predictability of the result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of Minnesota's governmental interest, and (5) application of the better rule of law. *Jepson*, 513 N.W.2d at 470.

### 1. Predictability of Result

St. Jude argues that the parties would have expected Michigan law to apply to the retaliation claim. Hall disagrees, asserting that the application of Minnesota law is the most predictable result.

The predictability-of-result factor "addresses whether the choice of law was predictable *before* the time of the transaction or event giving rise to the cause of action." *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003). This factor "is most relevant when parties have expectations about the applicable law." *Nw. Airlines, Inc.*, 111 F.3d at 1394. Here, Hall is a Michigan resident employed to work for St. Jude exclusively within the state of Michigan. These circumstances indicate that the parties would expect Michigan's common law of employment to apply, not Minnesota's. *See Rheineck v. Hutchinson Tech.*, 171 F. Supp. 2d 915, 927 (D. Minn. 2000) (applying

Minnesota choice-of-law analysis and determining that, for Wisconsin resident working in Wisconsin, "the application of Wisconsin employment statutes would have been the more reasonable expectation of the parties"); *see also Nw. Airlines, Inc.*, 111 F.3d at 1394 (determining that, when statements made in Minnesota to a local newspaper were first published in Minnesota, parties likely expected Minnesota law to apply); *Schumacher v. Schumacher*, 676 N.W.2d 685, 690 (Minn. Ct. App. 2004) (determining that Iowa law applied when plaintiff traveled to Iowa for a specific purpose and availed himself of Iowa's laws).

Hall counters that, based on the governing-law clause in the agreement, the parties not only predicted that Minnesota law would apply but intended Minnesota law to apply. But the clause provides that the *agreement* is governed by Minnesota law. The governing-law clause does not state that any claim relating to Hall's employment in *any* capacity is governed by Minnesota law. As addressed above, a claim for retaliation generally is not governed by an employment contract. *See Kimmelman*, 753 N.W.2d at 268; *Dukowitz*, 841 N.W.2d at 150.

In short, Hall is a Michigan resident who was employed to work in Michigan. For this reason, the parties likely would have predicted that a retaliation claim based on public policy would be governed by Michigan law.

2. **Maintenance of Interstate Order**

St. Jude argues that the maintenance of interstate order weighs in favor of applying Michigan law because Hall has extensive connections with Michigan. Hall maintains that

10

the parties' agreement allows the Court to apply Minnesota law without any disrespect to the state of Michigan.

The maintenance of interstate order primarily considers whether the application of Minnesota law would manifest disrespect for the other state's sovereignty or impede the movement of people and goods between the two states. *Jepson*, 513 N.W.2d at 471. "Evidence of forum shopping or evidence that application of one state's law would promote forum shopping, would be an attempt to evade, and would indicate disrespect for [the non-forum state's] law." *Schumacher*, 676 N.W.2d at 690-91. When examining this factor, courts consider the contacts each state has with the matters at issue in the lawsuit. *Rheineck*, 171 F. Supp. 2d at 927.

Michigan law contains a public-policy exception to the at-will employment rule. Refusing to apply Michigan's public-policy exception, and instead applying Minnesota law, to a retaliation claim brought by a Michigan resident over his employment in Michigan may indicate disrespect for Michigan's laws and sovereignty. *See Schumacher*, 676 N.W.2d at 691. Moreover, the application of Minnesota law may encourage forum shopping by demonstrating that the residency of a plaintiff and the location of the plaintiff's employment have little, if any, bearing on the law applied to the plaintiff's retaliation claim. *See id.* Hall counters that Michigan's sovereignty would not be disrespected by the application of Minnesota law because the agreement requires its application. But, as addressed above, the agreement does not contemplate retaliation claims, which are based on a common-law cause of action that concerns the termination of at-will employment. The agreement does not weigh in favor of either state in the Court's analysis of this factor.

In summary, maintenance of interstate order favors the application of Michigan law to Hall's retaliation claim.

### 3. Simplification of the Judicial Task

St. Jude argues that, to the extent that the judicial-task factor favors either state's law, it favors the application of Michigan law because it would dispose of Hall's claim more simply. Hall counters that this factor favors applying Minnesota law because the legal standard to state a retaliation claim is less onerous.

Simplification of the judicial task is not a significant factor when the law of either state could be applied without difficulty. *Jepson*, 513 N.W.2d at 472. Moreover, this factor is not particularly relevant when, as here, the competing laws are straightforward. *See Schumacher*, 676 N.W.2d at 691. As it appears that the law of either state could be applied with little difficulty and neither law is comparably more complex, this factor does not weigh in favor of either state's law.

### 4. Advancement of the Forum's Governmental Interest

St. Jude argues that advancement of the forum's governmental interest weighs in favor of applying Michigan law because applying Minnesota law would undermine Michigan's interest in developing its own public policy. Hall maintains that it is in Minnesota's interest to apply Minnesota law.

The purpose of this factor is to ensure that Minnesota courts do not apply rules of law inconsistent with Minnesota's concept of fairness and equity. *Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 833 (Minn. 1979). Applying this factor, a court considers which law would most effectively advance a significant interest of Minnesota. *Medtronic,*

*Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455 (Minn. Ct. App. 2001). The Court may consider the public policy of both forums in its analysis. *Schumacher*, 676 N.W.2d at 691.

Both Minnesota and Michigan have expressed public-policy interests in protecting from termination employees who refuse to violate the law. Michigan's law is consistent with Minnesota's concept of fairness and equity. Moreover, Michigan has an interest in developing its employment policies and applying those policies to Michigan residents who are employed within the state of Michigan. *See Rheineck*, 171 F. Supp. 2d at 927. For these reasons, this factor favors the application of Michigan law.

   5.   **Application of the Better Rule of Law**

The better-rule-of-law factor asks whether, "in an objective sense," one state's rule of law is better than the other state's rule of law. *Jepson*, 513 N.W.2d at 472. Generally, courts consider this factor "only when the other four factors are not dispositive as to which state's law should be applied." *Schumacher*, 676 N.W.2d at 691-92. Neither party presents any argument as to this factor, and the Court need not address it because the other factors are dispositive.

In summary, predictability of result, maintenance of interstate order, and advancement of the forum's governmental interest weigh in favor of applying Michigan law, and the simplification-of-the-judicial-task factor is neutral. For this reason, Minnesota's choice-of-law analysis requires the application of Michigan law to Hall's retaliation claim.

13

## II. St. Jude's Motion to Dismiss the Retaliation Claim

St. Jude argues that Hall fails to state a claim for retaliation under Michigan law because none of the conduct Hall refused to commit would have violated any law. Hall contests this assertion.

### A. Legal Standard

A complaint must allege facts that, when accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). When applying this pleading standard, a district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," and they must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions that are couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678-79.

### B. The Retaliation Claim

Michigan courts recognize a cause of action for retaliation when "the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Robinson v. Wal-Mart Stores, Inc.*, 341 F. Supp. 2d 759, 764 (W.D. Mich. 2004) (internal quotation marks omitted). However, to successfully state a retaliation claim under Michigan law, the employee must have refused to take an action that is *actually* illegal. *See Piasecki*, 640 N.W.2d at 888. An employee who *mistakenly*

14

believes that an action violates a law cannot state a claim for retaliation, even if the employee's belief is in good faith. *See id.*

Here, Hall asserts that he was discharged for refusing to violate the Physician Payments Sunshine Act, the Anti-Kickback Statute, and HIPAA. But St. Jude maintains that, because the conduct Hall refused to undertake would not have violated any law, Hall's retaliation claim is deficient as a matter of law.

1. **The Physician Payments Sunshine Act**

Sponsoring an office party is not a violation of the Physician Payments Sunshine Act (PPSA), St. Jude contends, in part because the PPSA is a reporting statute. Hall disagrees. Although sponsoring an office party is not a violation of the PPSA, Hall argues, St. Jude would have required him to violate the PPSA by filing a false report about the office party. With this context, Hall maintains that he has pled a valid PPSA violation.

The PPSA is a reporting statute that requires medical device manufacturers to report payments or other transfers of value to physicians and teaching hospitals. 42 U.S.C. § 1320a-7h. Manufacturers that fail to make timely disclosures are subject to civil money penalties for noncompliance. *Id.* § 1320a-7h(b). Hall alleges that Dr. Alawwa's office manager asked him about sponsoring a party for office staff and Hall refused, citing ethical obligations. The amended complaint does not allege any fact that links Hall's refusal to sponsor an office party to a violation of the PPSA. Hall does not allege that he is responsible for filing expense reports under the PPSA, that St. Jude had required him to file falsified expense reports on any prior occasion, or that he would be required to falsify

15

a report concerning the requested office party.² Nor does Hall allege that St. Jude was notified of his refusal to sponsor an office party, much less that this refusal contributed to his termination. Hall merely alleges that "after [his] refusals [St. Jude] began retaliating against [him]," which is not a specific fact but a legal conclusion that the Court may disregard. *See Iqbal*, 556 U.S. at 678-79.

In short, Hall fails to allege any fact supporting a determination that he was asked to violate the PPSA, that he refused to do so, or that his refusal to violate the PPSA resulted in his termination.

### 2. The Anti-Kickback Statute

St. Jude argues that Hall fails to allege that sponsoring a party would have violated the Anti-Kickback Statute. Hall maintains that St. Jude would have sponsored the party to ensure the office's continued business, thereby violating the Anti-Kickback Statute.

It is a violation of the Anti-Kickback Statute to knowingly and willfully offer or pay any remuneration to any person to induce that person to purchase medical goods or services or recommend that others purchase medical goods or services. 42 U.S.C. § 1320a-7b(b)(2)(A)-(B); *accord United States v. McClatchey*, 217 F.3d 823, 829 (10th Cir. 2000). Evidence of the requisite "knowing and willful" mindset includes acts that indicate an

---

² Although Hall addresses report falsification in an affidavit attached to his opposition memorandum, when considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Hall's affidavit was neither attached to the complaint nor referenced in the complaint. For this reason, consideration of the affidavit is improper at this stage. *See id.* But even if the affidavit were properly before the Court, it merely speculates that Hall *likely* would have been asked to violate the PPSA, not that Hall was, in fact, asked to do so and refused.

16

awareness of an exchange of money for an improper purpose, such as issuing payments to secure patient referrals, *see United States v. Moshiri*, 858 F.3d 1077, 1082 (7th Cir. 2017), paying patients to receive medical services, *see United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015), or making efforts to conceal the nature and source of such payments, *see United States v. Sanjar*, 876 F.3d 725, 747 (5th Cir. 2017).

Hall does not allege any factual nexus between his refusal to sponsor the office party and a violation of the Anti-Kickback Statute. The amended complaint does not allege any facts about the nature of the party, the nature of the compensation, or the relationship between entertainment expenses and the office's use of St. Jude's products and services. This is a consequential deficiency. Without a factual allegation in the amended complaint that supports a determination that sponsoring a party would have violated the Anti-Kickback Statute, Hall fails to allege any fact in support of a determination that Hall refused to violate the law.

### 3. HIPAA

St. Jude argues that, as a matter of law, Hall would not have violated HIPAA by accessing Dr. Alawwa's patient records as part of a device recall notification process. Hall responds that the amended complaint alleges facts supporting a determination that accessing patient records as requested would have required him to violate HIPAA.

HIPAA protects individuals' personal health information. 42 U.S.C. 1320d-6(a). An entity violates HIPAA by obtaining or disclosing a person's identifiable health information without authorization from that person, *id.*, but certain disclosures are not prohibited if they facilitate the recall of medical devices. HIPAA regulations provide that:

17

> [a] covered entity may use or disclose protected health information for . . . public health activities and purposes . . . [to a] person subject to the jurisdiction of the Food and Drug Administration (FDA) with respect to an FDA-regulated product or activity for which that person has responsibility . . . [t]o enable product recalls . . . (including locating and notifying individuals who have received products that have been recalled . . .).

45 C.F.R. § 164.512(b)(1)(iii)(C).

Here, a covered entity[3]—Dr. Alawwa—asked St. Jude to access his patient records to effectuate the recall of a medical device, a task that St. Jude assigned to Hall. Hall argues that the recall exception does not apply because he "is not a person with responsibility for the recalled product" and he is not personally under the FDA's jurisdiction. But Hall provides no legal authority in support of a determination that he, an individual employed by a medical-device manufacturer subject to the FDA's jurisdiction, is not also subject to the FDA's jurisdiction for the work he performs. Hall contends that the computer containing information about patients who had received the recalled product also contained identifiable health information for individuals not affected by the recall. Because he *could* have obtained private information unrelated to the recall, Hall argues, any use of the computer would have violated HIPAA. Hall's argument is untethered to any legal authority. That one has access to protected information is not synonymous with the requirement to *unlawfully* access that information. In short, Hall alleges no facts and cites no legal authority to support his contention that accessing private health information for the purposes of effectuating a device recall would have violated HIPAA.

---

[3] As relevant here, any "health care provider who transmits any health information in electronic form in connection with a transaction covered by" HIPAA is a "covered entity." 45 C.F.R. § 160.103.

Hall fails to allege facts that support his claim that any of the actions he refused to undertake would have been unlawful. For this reason, Hall fails to state a claim for retaliation under Michigan law. St. Jude's motion to dismiss the amended complaint for failure to state a claim is granted.

**ORDER**

Based on the foregoing analysis and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant St. Jude Medical S.C., Inc.'s motion to dismiss, (Dkt. 43), is **GRANTED**, and the amended complaint, (Dkt. 41), is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: August 20, 2018                                s/Wilhelmina M. Wright
                                                     Wilhelmina M. Wright
                                                     United States District Judge